UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERATED DEPARTMENT STORES, INC. and BLOOMINGDALE'S, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 04 C 879 |
| M.J. CLARK, INC., JOHNSON CONTROLS WORLD SERVICES, INC., and GLOBAL FIRE PROTECTION COMPANY, | ) ) ) ) ) | Judge George M. Marovich |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Following a flood at the Bloomingdale's store at 900 N. Michigan Avenue in Chicago, plaintiffs Federated Department Stores ("Federated") and Bloomingdale's, Inc. ("Bloomingdale's") filed a five-count amended complaint against defendants M.J. Clark, Inc. ("M.J. Clark"), Johnson Controls World Services, Inc. ("Johnson Controls") and Global Fire Protection Company ("Global Fire"). Plaintiff Bloomingdale's has moved for summary judgment on two of its five counts: Count I against M.J. Clark for breach of contract and Count V against Global Fire for negligence. Defendant M.J. Clark has moved for summary judgment on its breach of contract claim against plaintiffs and on plaintiffs' claims against it. For the reasons set forth below, the Court denies the motions for summary judgment.

**I. Background**

Unless otherwise noted, the following facts are undisputed.[1]

In March 2003, a sprinkler leak on the fifth floor of the Bloomingdale's store at 900 N. Michigan Avenue in Chicago damaged the first five floors of the store. Bloomingdale's and its owner, Federated, filed suit against M.J. Clark (the contractor), Global Fire (the subcontractor working on the sprinkler system) and Johnson Controls (the building manager responsible for the shutting down and drainage of the sprinkler system).

Plaintiff Bloomingdale's operates Bloomingdale's Department Stores, including the store at 900 N. Michigan Avenue in Chicago (the "Store"). Bloomingdale's is a wholly-owned subsidiary of Federated. When Federated wanted to remodel the fifth and sixth floors of the Store, it contracted with defendant M.J. Clark. The contract identifies Federated as the Owner and M.J. Clark as the "Contractor." The contract contains, among others, the following provisions:

> Article I, Section (a):
>
> Contractor shall furnish all services, materials, labor, tools, equipment, plant facilities and everything necessary to undertake and complete in a thoroughly first-class and workmanlike manner all of the work indicated in the Drawings,

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

Specifications and General and Special Conditions, under the direction and to the satisfaction of Architect and Owner.

General Conditions, Section 13(g):

Owner and Contractor each waive any rights each may have against the other on the account of any loss or damages occasioned to Owner or Contractor, their respective property, or to the premises or its contents arising from any liability, loss, damage or injury caused by fire or other peril for which property insurance is carried or required to be carried pursuant to this Agreement. The insurance policies obtained by Owner and Contractor pursuant to this Agreement shall contain endorsements or other provisions, waiving any right of subrogation which the insurer may otherwise have against the other party. The provisions of this Section 13g shall not limit the indemnification for liability pursuant to Section 13c.

General Conditions, Section 14(a):

The Owner shall keep the premises including all materials delivered on the jobsite to be incorporated in the Work fully insured against fire and other risks included in standard endorsement, exclusive, however, of Contractors' and Subcontractors' and workers' tools and equipment. The Owner will provide fire, extended coverage and vandalism and malicious mischief insurance on the building where the Work is being done, including coverage for materials, supplies, equipment, machinery, and apparatus all of which are to become a part of the building upon completion of the Work and all of which are located on the jobsite or immediately adjacent thereto.

General Conditions, Section 31(d):

The Contractor agrees that he is as fully responsible to the Owner for the acts and omissions of his Subcontractors and of persons either directly or indirectly employed by them, as he is for the acts and omissions of persons directly employed by him.

General Conditions, Section 39(a):

If either party to the Contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage.

M.J. Clark, in turn, subcontracted with Global Fire to perform work on the sprinkler system.

Global Fire could not do its work on the sprinkler system while the system contained water. While full, the sprinkler systems on the fifth and sixth floors of the Store carried a water pressure of 150 pounds per square inch. Thus, before Global Fire could do its work, it needed the building manager, Johnson Controls, to shut down and drain the system. Each floor had its own shut-off valve and drain.

A number of possible errors may have contributed to the flood. First, Johnson Controls required drain-down requests to be submitted in writing. M.J. Clark did not request the drain-down in writing. Rather, it requested the drain-down orally. The parties dispute whether the M.J. Clark employee (who orally requested the drain-down) requested that Johnson Controls drain down both the fifth and sixth floors or only the sixth floor. It is undisputed that Johnson Controls drained down only the sixth floor.

Another possible error occurred when the sprinkler fitter working for Global Fire failed to watch Johnson Controls' employee drain down the system. The parties dispute what the proper procedure is. The record contains evidence that the proper procedure is for the sprinkler fitter always to watch the drain-down to be sure the system is empty of water before the pipe is opened. The record also contains contrary evidence that the sprinkler fitter could rely on the engineer's word that the system had been drained down.

On the morning of the flood, Global Fire's sprinkler fitter asked an M.J. Clark employee whether the system was drained of water. M.J. Clark's employee telephoned Johnson Controls to ask whether the system was drained, but M.J. Clark's employee did not specify which floor he was asking about. Although the sixth-floor sprinkler system had been drained, the fifth-floor sprinkler system had not. Thinking the system was drained, Global Fire's employee opened a pipe on the fifth floor. Water gushed into the Store, causing damage to the first five floors.

## II. Summary judgment standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

The duty of a federal court considering a claim under its diversity jurisdiction is "to predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004).[2] The parties implicitly agree that Illinois law applies.

---

[2] The parties are completely diverse. Plaintiff Bloomingdale's is an Ohio corporation with its principal place of business in Ohio, and plaintiff Federated is a Delaware corporation with its principal place of business in Ohio. Defendants M.J. Clark and Global Fire are Illinois corporations with their principal places of business in Illinois. Defendant Johnson Controls is a Florida corporation with its principal place of business in Florida.

### A. Bloomingdale's negligence claim against Global Fire

In Count V, Bloomingdale's asserts a claim for negligence against Global Fire in connection with the flood at the Bloomingdale's store.

To establish a claim for negligence under Illinois law, Bloomingdale's must show that (1) the defendant owed a duty to the plaintiff; (2) defendant breached the duty; and (3) that the breach was the proximate cause of plaintiff's injuries. *Thompson v. County of Cook*, 154 Ill.2d 374, 382 (S.Ct. Ill. 1993); *Wojdyla v. City of Park Ridge*, 148 Ill.2d 417, 421 (S.Ct. Ill. 1992). If the defendant's negligence "does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury." *Thompson*, 154 Ill.2d at 383. Similarly, if a third party's independent act breaks the causal connection between the alleged original wrong and the injury, then the independent act becomes the proximate cause. *Thompson*, 154 Ill.2d at 383. Proximate cause is an issue of fact unless reasonable persons could reach only one conclusion based on the evidence. *Mach Mold Inc. v. Clover Assoc., Inc.*, 383 F. Supp.2d 1015, 1035 (N.D. Ill. 2005).

In this case, issues of fact remain so summary judgment is not appropriate. First, issues of fact remain as to whether Global Fire breached a duty, because the parties dispute whether it was Global Fire's responsibility to watch the drain-down to ensure the pipe was empty. Second, issues of fact remain as to the proximate cause of the damage to Bloomingdale's. A reasonable jury might find that other problems (such as the failure to request the drain down in writing or the possible failure to include the fifth floor in the oral request or the failure to specify the floor when confirming the pipe was empty) proximately caused the damage. Because reasonable

people could reach more than one conclusion as to the proximate cause of the harm to Bloomingdale's, the Court cannot enter summary judgment on this claim.

B. **Bloomingdale's breach of contract claim against M.J. Clark**

In Count I, Bloomingdale's asserts that M.J. Clark breached its contract with Federated. Under the contract, M.J. Clark agreed "that he is fully responsible to [Federated] for the acts and omissions of his Subcontractors and of persons either directly or indirectly employed by them." The parties also agreed that if "either party to the Contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage." Thus, Bloomingdale's, which claims to be a third-party beneficiary under the contract, argues that M.J. Clark is liable to it for Global Fire's negligence. That may be so, but Bloomingdale's has failed to show that it is entitled to judgment as a matter of law on its negligence claim against Global Fire. Accordingly, it cannot show that it is entitled to judgment as a matter of law on its breach of contract claim against M.J. Clark. Bloomingdale's motion for summary judgment is denied as to Count I.

C. **M.J. Clark's motion for summary judgment**

In its counterclaim, M.J. Clark asserts that plaintiffs' breached a contract by failing to procure insurance. It also asserts that plaintiffs claims against it are barred by waiver of risk provisions in the contract. Although M.J. Clark's motion seeks summary judgment on multiple claims, the entire motion is based on the same contract provisions.

The parties agree that Federated and M.J. Clark entered a contract for certain construction work. The parties also agree that the contract says that Federated "will provide fire, extended coverage and vandalism and malicious mischief insurance on the building where the

Work is being done, including coverage for materials, supplies, equipment, machinery, and apparatus . . ." The contract also provides that:

> [Federated] and [M.J. Clark] each waive any rights each may have against the other on the account of any loss or damages occasioned to [Federated] or [M.J. Clark], their respective property, or to the premises or its contents arising from any liability, loss, damage or injury *caused by fire or other peril for which property insurance is carried or required to be carried pursuant to this Agreement*.

(emphasis added).

Illinois courts have enforced such agreements to waive damages against other parties to contracts. *See Intergovernmental Risk Mgt. v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill.App.3d 784, 792 (Ill.App.Ct. 1998) ("the purpose of waiver of subrogation provisions is to allow the parties to a construction contract to exculpate each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance."); *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill.App.3d 651 (Ill.App.Ct. 1986). In *Village of Rosemont*, the waiver language the court enforced was very similar to the waiver language used here. There, the parties agreed to "waive all rights" against each other "for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to Paragraph 11.3 or any other property insurance applicable to the work." *Village of Rosemont*, 144 Ill. App.3d at 657. The court concluded that "the parties mutually agreed that insurance alone would provide recovery for any property loss or damage to the work. The parties specifically agreed that the responsibility for obtaining that insurance was plaintiff's and that the type of insurance to be purchased was to include all-risk insurance." *Id.* at 659.

Although the waiver language at issue here is clearly enforceable under Illinois law, M.J. Clark is not entitled to summary judgment in this case, because it is not clear, as a matter of law,

that Federated's injury was "caused by fire or other peril for which property insurance is carried or required to be carried pursuant to this Agreement." First, as to insurance required to be carried under the agreement, this agreement required a different type if insurance than the contract required in *Village of Rosemont*. Whereas the contract in the *Village of Rosemont* case required the plaintiff to purchase "all-risk" insurance, the contract in this case required Federated to purchase "fire, extended coverage and vandalism and malicious mischief insurance." It is not clear as a matter of law that such insurance would necessarily cover the damage here. Indeed, Federated put forth evidence that "extended coverage" is a term of art that typically (though certainly not always) includes windstorms, hail, explosion, riot, civil commotion and smoke damage, while "sprinkler leakage" coverage (which might cover the loss at issue here) is typically purchased separately as an "allied line." Second, there is no evidence that the damage was covered by a policy otherwise carried by Federated. Testimony that Federated's policy "could" or might cover the loss at issue is not evidence that it did cover the loss. Federated's actual policies are not in evidence. Accordingly, M.J. Clark is not entitled to summary judgment on plaintiffs' claims against it.

Nor is M.J. Clark entitled to summary judgment on its breach of contract claim. The undisputed evidence is that Federated obtained insurance that covered "fire and related extended coverages." M.J. Clark has failed to establish that plaintiffs, as a matter of law, failed to obtain the insurance required under the contract.

Accordingly, M.J. Clark has failed to show that it is entitled to judgment as a matter of law. Its motion for summary judgment is denied.

**IV.** **Conclusion**

For the reasons set forth above, the Court denies Bloomingdale's motion for summary judgment. The Court denies defendant M.J. Clark's motion for summary judgment.

This case is set for status on May 1, 2007 at 11:00 a.m.

ENTER:

George M. Marovich
United States District Judge

DATED: February 1, 2007