UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| FEDERATED DEPARTMENT STORES, | ) | |
|---|---|---|
| INC. and BLOOMINGDALE'S, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 04 C 879 |
| | ) | |
| M.J. CLARK, INC., JOHNSON | ) | Judge George M. Marovich |
| CONTROLS WORLD SERVICES, INC., and | ) | |
| GLOBAL FIRE PROTECTION COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Following a flood at the Bloomingdale's store at 900 N. Michigan Avenue in Chicago, plaintiffs Federated Department Stores ("Federated") and Bloomingdale's, Inc. ("Bloomingdale's") filed a five-count amended complaint against defendants M.J. Clark, Inc. ("M.J. Clark"), Johnson Controls World Services, Inc. ("Johnson Controls") and Global Fire Protection Company ("Global Fire"). The Court previously denied motions for summary judgment filed by plaintiff Bloomingdale's and defendant M.J. Clark. M.J. Clark has filed a motion for reconsideration of the Court's denial of summary judgment. For the reasons set forth below, the Court grants the motion to reconsider its previous decision and grants M.J. Clark's motion for summary judgment with respect to Counts I and III. The Court denies M.J. Clark's motion for summary judgment with respect to Count II.

**I.    Background**

Unless otherwise noted, the following facts are undisputed. The Court previously outlined the facts of this case and mentions here only those facts relevant to the motion for reconsideration.

In March 2003, a sprinkler leak on the fifth floor of the Bloomingdale's store at 900 N. Michigan Avenue in Chicago damaged the first five floors of the store. Bloomingdale's and its owner, Federated, filed suit against M.J. Clark (the contractor), Global Fire (the subcontractor working on the sprinkler system) and Johnson Controls (the building manager responsible for the shutting down and drainage of the sprinkler system).

Plaintiff Bloomingdale's operates Bloomingdale's Department Stores, including the store at 900 N. Michigan Avenue in Chicago (the "Store"). Bloomingdale's is a wholly-owned subsidiary of Federated. When Federated wanted to remodel the fifth and sixth floors of the Store, it contracted with defendant M.J. Clark. The contract identifies Federated as the Owner and M.J. Clark as the "Contractor." The contract contains, among others, the following provisions:

> General Conditions, Section 13(c):
>
> To the fullest extent permitted by law, Contractor shall indemnify, defend, and hold harmless Owner, Owner's affiliates, its employees, and authorized representatives and assigns of each from and against any and all suits, actions, legal or administrative proceedings, claims, debts, demands, liabilities, interest, costs and expenses of whatever kind or nature, whether arising during or after commencement or completion of the Work, which are in any manner caused, occasioned or contributed to in whole or in part, through any negligence or willful misconduct of the Contractor, any Subcontractor or Sub-subcontractor or anyone employed by any of them or anyone for whose acts any of them may be liable in connection with or incident to the Work, even though the same may have resulted from the joint, concurring or contributory negligence of Owner or any other person or persons, unless the same be caused by the sole negligence or willful misconduct of the party indemnified or held harmless hereunder provided that such claim, damage, loss or expense is attributable to injury or death to any person or persons and damage to any property, regardless of where located,

including the property of Owner. In any and all claims against those indemnified hereunder, the indemnification obligation shall not be limited in any way by any limit on the amount or type of damage, compensation or benefits payable under any workers' compensation acts, disability benefit acts or other employee benefit acts.

General Conditions, Section 13(g):

Owner and Contractor each waive any rights each may have against the other on the account of any loss or damages occasioned to Owner or Contractor, their respective property, or to the premises or its contents arising from any liability, loss, damage or injury caused by fire or other peril for which property insurance is carried or required to be carried pursuant to this Agreement. The insurance policies obtained by Owner and Contractor pursuant to this Agreement shall contain endorsements or other provisions, waiving any right of subrogation which the insurer may otherwise have against the other party. The provisions of this Section 13g shall not limit the indemnification for liability pursuant to Section 13c.

During the course of M.J. Clark's work at the 900 N. Michigan Bloomingdale's store, Federated was party to an "all-risk" insurance agreement with Lloyd's, London (the "Lloyd's Agreement"). The Lloyd's Agreement provided, in relevant part:

9. **PERILS INSURED:**

This policy insures against all risks of direct physical loss or damage, except as hereinafter excluded, occurring during the Policy Period.

10. **PERILS EXCLUDED:**

This policy does not insure against:

* * *

c. Ordinary wear and tear, gradual deterioration, inherent vice, latent defect, insects and vermin, depletion, erosion, corrosion, rust, wet rot, dry rot, mold, unless there is ensuing physical loss or damage from fire or explosion only.

d. Errors in design, faulty workmanship or use of faulty materials, unless there is ensuing physical loss or damage from fire or explosion only.

(The Lloyd's Policy at 6-7). The flood occurred during the policy period of the Lloyd's Agreement.

Few of the details about the cause of the flood are relevant to this motion. Suffice it to say that the flood happened when a Global Fire employee opened a pipe carrying water with pressure of 150 pounds per square inch. The pipe was supposed to be empty before it was opened, and the parties dispute who is to blame for the fact that the pipe was opened without first being drained of water.

Plaintiffs assert three claims against M.J. Clark. In Count I, plaintiffs assert a claim for breach of contract. In Count II, plaintiffs assert a claim for indemnification. In Count III, plaintiffs assert a claim for negligence.

## II.     **Summary judgment standard**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III. Discussion

#### A. M.J. Clark's motion for reconsideration

M.J. Clark has asked the Court to reconsider its previous denial of M.J. Clark's motion for summary judgment. A key reason why the Court denied summary judgment was the absence from the record of a determinative insurance agreement. M.J. Clark has now supplied the Court with the Lloyd's Agreement, and no party disputes the authenticity of the agreement.

The parties dispute whether Rule 60(b)(6) of the Federal Rules of Civil Procedure allows the Court to reconsider its previous denial of M.J. Clark's motion for summary judgment. That rule sets out the circumstances under which a court may "relieve a party or a party's legal representative from a final judgment, order, or proceeding . . ." *See* Fed. R. Civ. P. 60(b)(6). In denying the previously-filed motion for summary judgment, however, the Court did not enter a final judgment or order. Rule 60(b)(6) is inapplicable.

Instead, it is within the Court's discretionary power to reconsider a previous denial of a summary judgment motion. *See Kirby v. P.R. Mallory & Co., Inc.*, 489 F.2d 904, 913 (7th Cir. 1973). Although the Court rarely agrees to reconsider its rulings, it agrees to reconsider its previous summary judgment ruling because: 1) doing so will narrow the issues the Court will decide in a forthcoming bench trial; and 2) it appears that there are no issues of disputed fact and that one party may be entitled to judgment as a matter of law. The Court grants M.J. Clark's motion for reconsideration and will reconsider its previous decision denying M.J. Clark's motion for summary judgment.

### B. M.J. Clark's motion for summary judgment

The duty of a federal court considering a claim under its diversity jurisdiction is "to predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). The parties implicitly agree that Illinois law applies.

As it did in its original motion for summary judgment, M.J. Clark argues that plaintiffs' claims against it are waived due to a provision in the contract between Federated and M.J. Clark. The contract provides, in relevant part:

> [Federated] and [M.J. Clark] each waive any rights each may have against the other on the account of any loss or damages occasioned to [Federated] or [M.J. Clark], their respective property, or to the premises or its contents arising from any liability, loss, damage or injury *caused by fire or other peril for which property insurance is carried or required to be carried pursuant to this Agreement*. The insurance policies obtained by [Federated] or [M.J. Clark] pursuant to this Agreement shall contain endorsements or other provisions, waiving any right of subrogation which the insurer may otherwise have against the other party. The provisions of this Section 13g shall not limit the indemnification for liability pursuant to Section 13c.

(emphasis added).

In its first ruling, the Court noted that Illinois courts have enforced such agreements to waive damages against other parties to contracts. *See Intergovernmental Risk Mgt. v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill.App.3d 784, 792 (Ill.App.Ct. 1998) ("the purpose of waiver of subrogation provisions is to allow the parties to a construction contract to exculpate each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance."); *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill.App.3d 651 (Ill.App.Ct. 1986). In *Village of Rosemont*, the waiver language the court enforced was very similar to the waiver language used here. There, the parties agreed

to "waive all rights" against each other "for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to Paragraph 11.3 or any other property insurance applicable to the work." *Village of Rosemont*, 144 Ill. App.3d at 657. The court concluded that "the parties mutually agreed that insurance alone would provide recovery for any property loss or damage to the work. The parties specifically agreed that the responsibility for obtaining that insurance was plaintiff's and that the type of insurance to be purchased was to include all-risk insurance." *Id.* at 659.

In its prior ruling, the Court explained that although the waiver language is enforceable under Illinois law, M.J. Clark was not entitled to summary judgment because it was not clear, as a matter of law, that Federated's injury was "caused by fire or other peril for which property insurance *is carried or required to be carried pursuant to this Agreement*." (Emphasis added). First, as to insurance "required to be carried pursuant to this Agreement," the Court concluded that it was not clear as a matter of law that such insurance would necessarily cover the injury at issue in this case.

Second, as to insurance "carried," the Court noted that M.J. Clark had not included any of Federated's insurance policies with its summary judgment motion such that it was impossible to determine whether the flood was a covered peril. M.J. Clark has now included the relevant insurance policy–the Lloyd's Agreement–in the record. Accordingly, the Court can now consider whether the policy plaintiffs carried covers the "peril" at issue in this case, i.e., the flood.

Before the Court addresses that issue, however, the Court considers plaintiffs' argument that the Court has misinterpreted the phrase "carried or required to be carried pursuant to this

Agreement." Plaintiffs argue that the Court, in issuing its prior ruling, misinterpreted the phrase by considering both (1) insurance "carried" and (2) insurance "required to be carried pursuant to this Agreement." Plaintiffs argue that that phrase should be interpreted such that it applies only "to losses caused by fire or other peril that is required to be insured *pursuant to the agreement*." (Plaintiffs' brief at 4). The Court disagrees. Plaintiffs advocate not an interpretation but a removal from the contract of the words "carried or." This the Court will not do. The Court does not change its earlier reading of the language.

Thus, the Court turns to the issue of whether plaintiffs' damages were "caused by fire or other peril for which property insurance [was] carried" by plaintiffs. No one disputes the cause of plaintiffs' damages. The damages were caused by a flood of water that poured from a pipe which was opened while it was still full of water. The question, then, is whether floods of water pouring from pipes are among the perils covered by the Lloyd's Agreement. To answer that question, the Court turns to the language of the Lloyd's Agreement. The Lloyd's Agreement provides, in relevant part:

9. **PERILS INSURED:**

This policy insures against all risks of direct physical loss or damage, except as hereinafter excluded, occurring during the Policy Period.

10. **PERILS EXCLUDED:**

This policy does not insure against:

* * *

c. Ordinary wear and tear, gradual deterioration, inherent vice, latent defect, insects and vermin, depletion, erosion, corrosion, rust, wet rot, dry rot, mold, unless there is ensuing physical loss or damage from fire or explosion only.

> d. Errors in design, faulty workmanship or use of faulty materials, unless there is ensuing physical loss or damage from fire or explosion only.

Based on the plain all-risk language of Section 9 of the Lloyd's Agreement, the Court concludes that the plaintiffs' damages were caused by a peril covered by the Lloyd's Agreement unless the peril falls within one of the Lloyd's Agreement's exclusions.

Plaintiffs first argue that the flood is excluded by Section 10(d)'s exclusion for "[e]rrors in design, faulty workmanship or use of faulty materials . . ." In support of their argument, plaintiffs cite *State Farm Fire and Casualty Co. v. Tillerson*, 334 Ill. App.3d 404, 408-409 (5th Dist. Ill. App. Ct. 2002). That case is inapposite. In that case, the court did *not* consider the meaning of a "faulty workmanship" exclusion to an insurance policy. Instead, the court considered whether the allegations in the underlying complaint (which alleged, among other things, that the insured's workmanship was defective in that he failed to take certain precautions when building a room addition) amounted to an "occurrence" under an insurance policy such that the insurance company would have a duty to defend the underlying lawsuit. That court considered the meaning of "occurrence" in an insurance policy, not the meaning of "faulty workmanship." What would be apposite to this case would be cases interpreting a "faulty workmanship" exclusion to an all-risk insurance policy.

The plain language of the exclusion for "[e]rrors in design, faulty workmanship or use of faulty materials . . ." is that the policy excludes damages caused by faulty materials or faulty installation of the pipes, rather than subcontractor negligence in the repair or maintenance of the pipe. This reading is consistent with other courts' interpretations of "faulty workmanship" exclusions to all-risk policies. *See Otis Elevator Co. v. Factory Mutual Ins. Co.*, 353 F. Supp.2d

274, 281 (D. Conn. 2005) (subcontractor negligence not excluded by "faulty workmanship" exclusion to all-risk policy); *City of Burlington v. Hartford Steam Boiler Inspection and Ins. Co.*, 190 F. Supp.2d 663, 673 (D. Vt. 2002) (explaining that "faulty workmanship" exclusion unambiguously refers to defective materials and faults during the construction process rather than to accidental damage caused by negligence) (citing *City of Barre v. New Hampshire Ins. Co.*, 136 Vt. 484, 396 A.2d 121 (Vt. Sup. Ct. 1978)). In this case, where the flood was allegedly caused by negligence, the "faulty workmanship" exclusion does not apply.

Plaintiffs also argue that the flood alleged in this case is excluded by Section 10(c)'s exclusion for "[o]rdinary wear and tear, gradual deterioration, inherent vice, latent defect, insects and vermin, depletion, erosion, corrosion, rust, wet rot, dry rot, mold." The problem with this argument is that this is a list of excluded *perils*, not a list of excluded types of damages. The list contains excluded *causes* of damage, not excluded types of damages themselves. The exclusion excludes, for example, damages *caused by* mold, damages *caused by* wet rot, damages *caused by* corrosion and damages *caused by* rust. It does not exclude damages–even mold damage–caused by a negligently-induced flood. Accordingly, the Court concludes that the flood is not excluded by the Lloyd's Agreement and, hence, was a peril covered by the Lloyd's Agreement.

Still, plaintiffs argue that the flood was not covered by insurance it carried because the deductible was higher than the value of the damage, such that plaintiffs never made a claim under the Lloyd's Agreement. This is immaterial. Under Section 13(g), plaintiffs waived any rights to loss or damages "caused by fire or other *peril* for which insurance is carried . . ." Under the plain language of the waiver provision, claims are waived if the *peril* is covered by the insurance, not solely when every dollar of the damages arising from the peril is covered by

insurance. The Court has already concluded that the peril–the flood–was covered by an all-risk insurance policy carried by Federated.

Finally, plaintiffs argue that section 13(g) does not apply to waive plaintiffs' right to recover against M.J. Clark in this case because that section does not apply to indemnification. Specifically, plaintiffs point out that section 13(g) states that it does not "limit the indemnification for liability pursuant to 13c." Section 13(c), in turn, says that, "[M.J. Clark] shall indemnify, defend, and hold harmless [Federated], [Federated's] affiliates . . . from and against any and all suits, actions, legal or administrative proceedings, claims, debts, demands, liabilities, interest, costs and expenses of whatever kind or nature . . ." Plaintiffs assert three claims against M.J. Clark. Only Count II is a claim for indemnification under Section 13(c). Accordingly, only Count II survives Section 13(g)'s waiver provision. The waiver provision in Section 13(g) does not entitle M.J. Clark to summary judgment with respect to Count II.

For these reasons, the Court concludes that plaintiffs waived the claims they asserted against M.J. Clark in Counts I and III of the Amended Complaint. M.J. Clark is entitled to judgment as a matter of law on those claims, and the Court hereby grants M.J. Clark's motion for summary judgment as to those claims.

**IV. Conclusion**

For the reasons set forth above, the Court grants M.J. Clark's motion for reconsideration.

The Court grants M.J. Clark's motion for summary judgment with respect to Counts I and III.

The Court denies M.J. Clark's motion for summary judgment with respect to Count II.

ENTER:

_George M. Marovich_
George M. Marovich
United States District Judge

DATED: July 17, 2007