IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACY'S, INC., and<br>BLOOMGINDALE'S, INC., | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No.: 04 C 0879 |
| | ) | Judge: Gottschall |
| JOHNSON CONTROLS WORLD<br>SERVICES, INC. and<br>GLOBAL FIRE PROTECTION<br>COMPANY, | )<br>)<br>)<br>)<br>) | Magistrate Judge: Cole |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF DAMAGES**

Plaintiffs, Macy's, Inc. ("Macy's") and Bloomingdale's, Inc. ("Bloomingdale's"), by and through their undersigned counsel, and for their Memorandum of Law In Support of Damages, hereby states as follows:

**INTRODUCTION**

Plaintiffs are entitled to recover the entirety of the damages claimed in this matter. The evidence and testimony clearly establishes that all claimed damages were directly caused by the improper opening of the charged pipe and subsequent release of water into the Premises. Plaintiffs paid a substantial amount to various vendors who performed clean-up and repair activities shortly after the flood, and these charges were reasonable and necessary in order to mitigate their loss. Plaintiffs have proven that they suffered business income loss as well as increased labor costs due to the flood clean-up. Most importantly, the testimony establishes that Plaintiffs did everything possible to mitigate their damages, and saved thousands of dollars in

1

additional damages through their efforts.  Plaintiffs have also proven that there is still a significant amount of damage that has not yet been repaired, and that they are entitled to recover for this loss as well.

Plaintiffs expended significant costs in responding to the water damage in the days immediately following the flood.  They were required to call upon various vendors to perform clean-up and repair services such as removing water from the Premises, lifting and drying carpeting, cleaning up debris from fallen ceiling tiles and drywall.  Plaintiffs also brought in companies to deal specifically with the threat of mold growth from the extensive amount of water, as this is a public area with a large amount of traffic.  Further, Plaintiffs utilized their own employees, who were familiar with the store, to perform some clean-up tasks.  These expenses are all recoverable as directly arising out of the flood and were necessary in order to mitigate further damages.

Plaintiffs suffered several different categories of damages and is entitled to be made whole.  It is axiomatic that a plaintiff is entitled to recover all damages "which naturally flow from the commission of a tort…" *Kritzen v. Flender Corp.*, 226 Ill.App.3d 541, 557 (2nd Dist. 1992).  It is recognized in Illinois that "…an injured party has an obligation to take reasonable steps to minimize his damages and thus avoid heaping up additional losses for which the tortfeasor may be held liable." *Toledo Peoria and Western Railway v. Metro Waste Systems, Inc.*, 59 F.3d 637 (7th Cir. 1995).  However, with this duty comes the right to recover all expenses reasonably incurred in furtherance of minimizing the loss. *Id*.  Plaintiffs acted diligently and responsibly in responding to the flood, minimizing their losses and returning the store back to operation as soon as possible.

The bulk of the damages sustained by Plaintiffs have either been repaired and paid for, or there are qualified estimates for such repairs. A recognized measure of damages to personal property is the reasonable cost of making repairs. *Lucas v. Bowman Dairy Co.*, 50 Ill.App.2d 413, 416, 200 N.E.2d 374, 376 (1st Dist. 1964). Actual payment of repair costs is admissible to show payment and the reasonableness of the cost. *People v. Tidwell*, 33 Ill.App.3d 232, 237, 338 N.E.2d 113, 117 (1st Dist. 1975). Paid bills for repair work are prima facie proof of the amount and reasonableness of such charges. *Lucas*, 50 Ill.App.2d at 419; *Omni Overseas Freighting Co., Inc. v. Cardell Ins. Agency*, 78 Ill.App.3d 639, 645 (1st Dist. 1979). Further, repair estimates by qualified persons are admissible to support a claim for damages for repair and restoration. *Marth v. Illinois Weather-Seal, Inc.*, 50 Ill.App.3d 577, 581, 365 N.E.2d 588, 591(1st Dist. 1977) *citing Lucas*, 50 Ill.App.2d at 421.

Further, certain items at the Premises sustained damage which could not be repaired, and Plaintiffs have had to replace those items, or seek to replace them. Such items include office equipment, a fax machine, cash wrap stands, and a fixture. The proper measure of damages for such property is the reasonable value of the property just prior to its destruction. *Gannon v. Freeman*, 103 Ill.App.3d 917, 919, 431 N.E.2d 1303, 1305 (1st Dist. 1982). In general, "…the owner of destroyed goods is entitled to be put in as good a position pecuniarily as if his property had not been destroyed and that the proper criterion to be used in measuring damages is the value of the thing destroyed." *H.K. Porter Co., Inc. v. Halperin*, 297 F.2d 442 (7th Cir. 1962), *citing Standard Oil Co. of New Jersey v. Southern Pacific Co.*, 268 U.S. 146 (1925). Plaintiffs have attempted to find this value by depreciating the replacement cost of these items, in order not to receive a betterment in the form of brand new items.

Plaintiffs seek nothing more than the actual damages they have suffered as a result of the flood which occurred six years ago, and for which they still have not been fully compensated. Their damages are factually and legally supported, and they are, therefore, entitled to an award of damages in their favor in the amount of $1,307,575.36, less a setoff for the settlement amounts already paid by the two settling defendants, in the amount of $825,000.00.

## ANALYSIS OF DAMAGES

Plaintiffs' damages have been summarized in a Master Loss Summary, marked at trial as Proposed Exhibit 17 and referred to extensively. A true and correct copy of Proposed Exhibit 17 is attached hereto as Exhibit A for ease of reference. Each item on the Master Loss Summary was given a letter/number designation and was often referred to according to that designation at trial. Plaintiffs seek the following damages, as set forth on the Master Loss Summary and summarized herein:

**A1- Grainger Vacuums:**

Plaintiffs seek the invoice value of the 15 wet vacs that were purchased on the day of the flood, in order to remove as much water as quickly as possible from the flooring of the Premises. Plaintiffs are entitled to recover $2,501.06 for this expense. [See Plaintiffs' Proposed Findings of Fact With Respect to Damages ("Proposed Findings of Fact"), ¶ 22-26.]

**A2- Munters Moisture Control:**

Defendants have stipulated that Plaintiffs are entitled to this expense in the amount of $53,090.86. [See Final Pretrial Order, Agreed Statement of Uncontested Facts (Schedule A), ¶ 26.]

**A3- Universal Restoration Services:**

Defendants have stipulated that Plaintiffs are entitled to this expense in the amount of $81,483.31. [See Final Pretrial Order, Agreed Statement of Uncontested Facts (Schedule A), ¶ 26.]

### A4- Kellermeyer Building Services:

Defendants have stipulated that Plaintiffs are entitled to this expense in the amount of $4,695.00. [See Final Pretrial Order, Agreed Statement of Uncontested Facts (Schedule A), ¶ 26.]

### A5- Kellermeyer Building Services:

Plaintiffs seek the amount invoiced and paid to its cleaning service for cleaning up water streaks that streaked down the escalator well and was not discovered until some weeks after the flood. [Proposed Findings of Fact, ¶ 27.] Plaintiffs are entitled to this cost in the amount of $825.00.

### A6- Thyssen Krupp Elevator:

Plaintiffs seek the amount invoiced and paid to Thyssen Krupp for the extensive repairs it made to the elevators and escalators as a result of the flood. Plaintiffs are entitled to recover $108,880.59 for this expense. [Proposed Findings of Fact, ¶ 28.]

### A7- Sensormatic:

Defendants have stipulated that Plaintiffs are entitled to this expense in the amount of $8,154.78. [See Final Pretrial Order, Agreed Statement of Uncontested Facts (Schedule A), ¶ 26.]

### A8- ADT Systems:

Defendants have stipulated that Plaintiffs are entitled to this expense in the amount of $845.51. [See Final Pretrial Order, Agreed Statement of Uncontested Facts (Schedule A), ¶ 26.]

**A9- F&F Office- Furniture Replacement:**

Plaintiffs seek recovery for water damage to furniture and office supplies that had to be disgarded due to the flood. Plaintiffs paid $792.31 for the replacement of these items, but are only seeking $475.39, the fair depreciation of these items as calculated by its expert. Plaintiffs are entitled to recover $475.39 for this expense. [Proposed Findings of Fact, ¶¶ 29-31.]

**A10- Absolute Security Management:**

Defendants have stipulated that Plaintiffs are entitled to this expense in the amount of $172.00. [See Final Pretrial Order, Agreed Statement of Uncontested Facts (Schedule A), ¶ 26.]

**A11- Clayton Environmental Services:**

Defendants have stipulated that Plaintiffs are entitled to this expense in the amount of $6,999.24. [See Final Pretrial Order, Agreed Statement of Uncontested Facts (Schedule A), ¶ 26.]

**A12- Engle Martin Adjustment Services:**

Plaintiffs seek recovery for the amount invoiced for the adjusting services of Engle Martin Adjustment Services. Plaintiffs' standard procedure on a major loss is to bring it Engle Martin to assist in the cleanup and mitigation effort. Plaintiffs are entitled to recover $3,611.13 for this expense. [Proposed Findings of Fact, ¶ 32.] This is a proper expense incurred in mitigating Plaintiffs' loss.

**A13- Wrap & Send: 4 Palates to Jobber:**

Plaintiffs seek recovery for the amount it paid to ship salvaged clothing to the salvor. Plaintiffs are entitled to recover $596.60 for this expense. [Proposed Findings of Fact, ¶ 50.]

**A14-20- MJ Clark Invoice for Initial Cleanup:**

6

Plaintiffs seek recovery for the amount it paid to MJ Clark, Inc., the general contractor, for the cleanup and repair services it and its subcontractors performed in immediate response to the flood, as well as in the days following the flood. MJ Clark invoiced Bloomingdale's in the amount of $168,583.16 for the work of itself and its subcontractors during this period. Bloomingdale's paid MJ Clark a negotiated amount of $150,000.00 in full satisfaction of the MJ Clark invoice for the initial cleanup effort, and is entitled to recover this amount. [Proposed Findings of Fact, ¶¶ 8-19.]

**B1-4  Labor:**

Plaintiffs seek recovery for $21,077.39 in additional labor expenses that they were required to pay to their employees relating to the flood. This amount includes compensation to hourly employees who were called upon to work overtime and assist in minimizing the flood damage to merchandise and fixtures. A portion of this amount is for the payment of wages to employees who had been scheduled to work on the day of the flood but were not needed for the clean-up efforts, nor were they needed for their normal duties because the store was closed. This charge also includes costs for teams of employees who had to perform activities in addition to their normal activities, such as staging and moving merchandise into unaffected sections of the store in order to accommodate the work that was being done as a result of the flood, such as ripping out walls and replacing drywall. By using their own employees, Plaintiffs mitigated their loss and kept invoiced damages to a minimum. [Proposed Findings of Fact, ¶¶ 33-40.] In addition, Plaintiffs' damages expert opined that Plaintiffs are entitled to additional overhead on these labor costs, such as supervision fees and Social Security costs because these were additional labor costs incurred by Plaintiffs to defer or reduce future losses. [*Id.* at ¶ 41.] Therefore, Plaintiffs are entitled to recovery for this expense in the amount of $29,508.00.

**C1-2   Destroyed Merchandise:**

The flooding caused a substantial amount of merchandise to become damaged. Plaintiffs called in a recognized salvor to handle the salvage of this merchandise in the most efficient manner possible, with the assistance of Bloomingdale's personnel. The salvor was able to salvage a percentage of the gross merchandise loss, but Bloomingdale's lost $77,190.56 in goods that were not salvageable. Compensation for destroyed merchandise is a proper category of damages, and the use of the wholesale price minus any salvage is a proper measure of damages. *Chicago Title & Trust, Co. v. W.T. Grant, Co.*, 2 Ill.App.3d 483, 489, 275 N.E.2d 670 (2nd Dist. 1971). *See also Behrens v. W.S. Bills & Sons, Inc.*, 5 Ill.App.3d 567, 283 N.E.2d 1 (1st Dist. 1972). Plaintiffs acted responsibly in quickly utilizing a nationally recognized salvor, who obtained a strong recovery on the heavily damaged items. Therefore, Plaintiffs are entitled to $77,190.56 in compensation for its loss. [Proposed Findings of Fact, ¶¶ 42-49.]

**D1-   Business Income Loss:**

Plaintiffs also suffered a business income loss as a result of the store not opening on March 11, 2003, with only certain departments or store areas opening in the days following. Business interruption loss is a proper element of damages where a party's negligence causes the loss of use of that area. The accepted method for proving lost earnings is to establish loss of net profit, and "it is not necessary that the loss be proven with absolute certainty." *Abreu v. Unica Indus. Sales, Inc.*, 224 Ill.App.3d 439, 455, 556 N.E.2d 661 (1st Dist. 1991). The testimony of Brad Boyle establishes that the business income loss calculation submitted by Bloomingdale's in the amount of $58,356.94 was a reasonably accurate indicator of Bloomingdale's actual loss during the time the store was closed or partially closed. [Proposed Findings of Fact, ¶¶ 51-56.]

**E1-   Excess Energy Utilization:**

Plaintiffs seek recovery for $470.59 in excess energy usage that was necessitated as a result of the flood. In the week following the flood, the store had to run power 24 hours per day, so repair workers could work day and night. Plaintiffs calculated the excess energy usage during this period, which amounted to $470.59. Plaintiffs are entitled to recover this amount. [Proposed Findings of Fact, ¶ 57.]

### F1-4- Travel & Related Expenses

Plaintiffs incurred $5,947.32 in travel expenses for necessary store personnel to travel to the store in order to oversee clean-up efforts and ensure that such efforts were made in an efficient manner, further reducing damages and in compliance with their duty to mitigate the loss. Such an expense was properly incurred in mitigating additional losses and is compensable. [Proposed Findings of Fact, ¶ 58.]

### G1  INC Fixture:

Plaintiffs seek recovery for damage to a table fixture that was used on the sales floor and became warped as a result of flooding damage. The cost to replace this fixture is $2,297.48, but Plaintiffs are seeking $1,952.86, the fair depreciation of this item as calculated by its expert. Plaintiffs are entitled to recover $1,952.86 for this expense. [Proposed Findings of Fact, ¶ 61-62.]

### G2- Fax Machine Human Resources:

Plaintiffs seek recovery for damage to a fax machine in the human resources office that became damaged as a result of the flood and had to be discarded. The cost to replace the fax machine was $800.00, but Plaintiffs are seeking $480.00, the fair depreciation of this item as calculated by its expert. Plaintiffs are entitled to recover $480.00 for this expense. [Proposed Findings of Fact, ¶ 59-60.]

### G3- 5th Floor Offices, Walls, Ceilings

Plaintiffs seek recovery for the repair and repainting of an area on the fifth floor that was damaged by the flood. The cost to repair the area is $10,450.00. Plaintiffs are entitled to recover this expense. [Proposed Findings of Fact, ¶ 67.]

### G4- 4th Floor Intimates Cash Wrap Stands (2):

Plaintiffs seek recovery for damage to two cash wrap stands that were damaged as a result of the flood and had to be discarded. The cost to replace these cash wrap stands is $48,000.00, but Plaintiffs are seeking $33,600.00, the fair depreciation of this item as calculated by its expert. Plaintiffs are entitled to recover $33,600.00 for this expense. [Proposed Findings of Fact, ¶ 63-66.]

### G5- 4th Floor-DKNY Painted Shelving:

Plaintiffs seek recovery for the cost to repair this area of shelving that was damaged by water from the flood. The estimated cost to repair this area is $1,600.00, and Plaintiffs are entitled to that amount. [Proposed Findings of Fact, ¶ 68.]

### G6, G7- Third Floor Temporary Repairs (labor and carpet):

Plaintiffs seek to recover the cost of removal of damaged hardwood flooring on the third floor and the replacement of that flooring with carpeting on a temporary basis due to the flood. Because of the significant water damage to the flooring at the premises, large portions of the hardwood flooring on the third floor buckled and had to be pulled up the day of the flood. The sub-flooring was temporarily covered with a remnant piece of carpet that was kept in storage and typically used for Christmas displays, in order to allow that portion of the store to open for business the next day, and until the flooring could be replaced with a more permanent solution. The "Christmas" carpeting had to be cut into pieces and patched into the floor prior to opening.

A few months after patching in the "Christmas carpet", carpeting was installed over a large area where the hardwood flooring had been torn up. For large areas such as the area on the third floor, carpeting can be installed much quicker than hardwood flooring, and with much less disturbance to the retail area. Plaintiffs made the decision to put carpeting over the area that had previously had hardwood flooring in order to allow more retail space to stay open to customers, as well as because it was more economical at the time. The temporary laying down of carpeting over an area in which hardwood flooring previously existed, and where it is intended that hardwood flooring will be replaced is a reasonable expense to open up the retail area and to offset and mitigate any income losses. MJ Clark performed the work of removing the Christmas carpeting and buckling hardwood floor, and replacing that floor with carpeting. Plaintiffs paid $99,400 for MJ Clark's labor and expenses, and $44,514.00 for the carpeting material. [Proposed Findings of Fact, ¶ 71-76.]

Plaintiffs are entitled to recover the amount it paid for the removal of old flooring and installation of the temporary carpeting, in the amount of $143,914.00. These expenses were incurred as a direct result of the damage caused by the flood, and assisted in mitigating Plaintiffs' additional damages because it enabled the store to continue operating without having to shut down for a significant period of time to replace the hardwood flooring that had been destroyed.

**G8, G9-      3rd Floor- YES Hardwood Flooring/Bridesmaids Hardwood Flooring:**

In addition to the temporary repairs that had to be made to the third floor in order to remove the buckled hardwood flooring, Plaintiffs seek the estimated cost to replace the hardwood flooring on the third floor that had to be torn out as a result of the flood. Plaintiffs are entitled to be placed back in the position it was in prior to the flood, which would be the full

11

replacement of the hardwood flooring. Plaintiffs obtained estimates from MJ Clark and another contractor, Valenti, to install hardwood flooring on the third floor that had been destroyed or damaged in the flood. The total estimated cost for these repairs, based on the MJ Clark estimate (which is less than the Valenti estimate) is $249,675.00. However, Plaintiffs recognize that the hardwood flooring was not new at the time of the loss, and in order not to receive a betterment in the form of brand new hardwood flooring, Plaintiffs are seeking only the depreciated amount of the hardwood as calculated by its expert. The total depreciated amount that Plaintiffs seek for new flooring on the third floor is $233,249.00. [Proposed Findings of Fact, ¶¶ 83-92, 95-104.]

**H3-10-    Carpet:**

Plaintiffs seek the estimated cost to replace the carpeting that was damaged by the flood. Areas of carpeting that are still on the floors sustained discoloration and rust stains that are still present. The carpets were cleaned numerous times in the days after the flood, and have been cleaned on a regular basis since that time, but the stains and discoloration cannot be removed. Prior to the flood, the carpeting on the third and fourth floors was in good condition, and there were no plans to replace it. Plaintiffs obtained estimates from MJ Clark and another contractor, Valenti, to perform the removal and reinstallation of carpeting in several areas on the third and fourth floor that sustained damage in the flood. The total estimated cost for these repairs, based on the MJ Clark estimate (which is less than the Valenti estimate) is $302,618.00. However, Plaintiffs recognize that the carpeting was not new at the time of the loss, and in order not to receive a betterment in the form of brand new carpeting, Plaintiffs are seeking only the depreciated amount of the carpeting as calculated by its expert. The total depreciated amount that Plaintiffs seek for new carpeting is $288,526.27. [Proposed Findings of Fact, ¶¶ 81-95, 98-103, 105.]

## JOINT AND SEVERAL LIABILITY

Plaintiffs assert that the proper method for apportioning liability in this case is a comparative fault analysis. Each defendant in this matter bears some liability for the flood. Two defendants have already settled with the Plaintiffs, implicitly recognizing that they bore some measure of fault for the incident. The Court has now found that Johnson bears a significant portion of the fault for its negligence in failing to drain down the proper floor.

Johnson, as the remaining defendant in this action, is jointly and severally liable for the incident. "It has long been the law in this State that where two or more persons directly produce a single, indivisible injury by their own negligence, they are jointly and severally liable even though there was no common duty, common design, or concerted action." *Millburn Mut. Ins. Co. of Lake Villa v. Glaze*, 86 Ill.App.3d 1055, 1065, 410 N.E.2d 295, 302 (1st Dist. 1980); *Padgett v. A & M Insulation Co.*, 266 Ill.App.3d 320, 640 N.E.2d 21 (3rd Dist. 1994); *Woods v. Cole*, 191 Ill.2d 512, 517 (1998). Plaintiffs' losses stem from the single event of the flood, which was caused by negligence on the part of each defendant. It is undisputed that Plaintiffs in no way contributed to or caused the flood and resulting damage which occurred, and they are totally without fault. Therefore, all fault is allocated between the defendants and Johnson is jointly and severally liable for all damages suffered by Plaintiffs.

## CONCLUSION

Plaintiffs suffered total damages in the amount of $1,307,575.36. These damages were all reasonable and necessary responses to the flood that occurred at the Bloomingdale's store, through no fault of its own. Plaintiffs worked diligently to mitigate their losses to the best of their ability, and by all accounts the damages suffered could have been much greater. Therefore, Plaintiffs respectfully request that the Court enter an order finding Johnson Controls jointly and

severally liable for their damages in the amount of $1,307,575.36, with a setoff for the settlement amounts previously paid by the settling defendants.

                                      Respectfully submitted,

                                      MACY'S, INC., and BLOOMINGDALE'S, INC.

                                      By: _____/s/Stephanie Espinoza_____
                                                  One of their Attorneys

Dennis Minichello  
Stephanie Espinoza  
Marwedel, Minichello & Reeb, P.C.  
10 South Riverside Plaza, Suite 720  
Chicago, IL  60606  
(312) 902-1600

# CERTIFICATE OF SERVICE

I, Stephanie Espinoza, an attorney, certify that on this 14th day of July, 2009, I electronically filed the above Plaintiffs' Memorandum of Law In Support of Damages with the Clerk of the Northern District of Illinois via its CM/ECF system, which will send a notice of electronic filing to the following counsel:

- **Myra A Marcaurelle**
  mmarcaurelle@sachnoff.com
- **Robert Alan Roth**
  rroth@sachnoff.com wbrown@sachnoff.com
- **David Zev Smith**
  dzsmith@sachnoff.com bboksa@sachnoff.com
- **Richard Kenneth Wray**
  rwray@sachnoff.com

/s/ Stephanie A. Espinoza
Stephanie A. Espinoza